```
                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION
```

FILED
02 JUN 25 PM 4: 43
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **CAROL D. MARKS,** | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-00-S-1210-S |
| **THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,** | ) |
| Defendants. | ) |

ENTERED
JUN 2 5 2002

## MEMORANDUM OPINION

This is an action in which plaintiff, Carol D. Marks, contends that defendant, the Board of Trustees of the University of Alabama, discriminated against her on the basis of her race (African-American), and, retaliated against her for engaging in protected activity, all in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

The action now is before the court on defendant's motion for summary judgment. Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden



of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, evidentiary submissions, and briefs, this court concludes that the motion for summary judgment is due to be granted.

## I. SUMMARY OF FACTS

Plaintiff is an African-American female who was hired by defendant during 1972, to work as a secretary at the University of Alabama at Birmingham ("UAB"). Plaintiff progressed steadily through the ranks and, at the time she retired, was classified as an administrative associate. Throughout her lengthy tenure with UAB, plaintiff was a loyal and conscientious employee, and her performance appraisals were consistently outstanding.

Beginning in 1994, however, and continuing until March of 1999, approximately half of plaintiff's salary was paid by defendant and the remainder by the American Physiological Society ("APS"), as compensation for duties plaintiff performed for Dr. James A. Schafer and the *American Journal of Physiology*. During that time, Schafer, a professor of physiology and biophysics at UAB,

was an editor of the *American Journal of Physiology*, which is a publication of the APS. Schafer's supervisor was Dr. Dale John Benos, Chairman of UAB's Department of Physiology and Biophysics.

During 1998, the members of the administrative staff of UAB's Department of Physiology and Biophysics were awarded a 6.75% increase in pay. Only that portion of plaintiff's salary funded by UAB was affected, however, thereby resulting in only a 3.28% *net* increase of her *total* pay.

Plaintiff testified that she complained on several occasions about receiving an overall pay increase that was less than that of other administrative staff members. Even so, nothing in the record indicates that plaintiff ever complained that the reason for her lower pay increase was her race.

Plaintiff filed a charge of discrimination with the EEOC on January 21, 1999. She alleged that defendant had discriminated against her on the basis of her race with regard to her 1998 pay increase, and that defendant had engaged in a pattern of "stifling [her] annual increases."[1] Notably, the charge did not assert that defendant had retaliated against her. Specifically, and in pertinent part, the charge reads as follows:

> In 1998, it was announced in an Administrative Staff meeting that we would receive a 6.75% increase, effective 10/1/98. I only received a 3.28% [increase] while all other administrative staff members received in excess of 6%. . . . I talked with Drs. Schafer and Berecek about this and they told me that it was Dr. Benos'[s] decision not to award me a 6.75% increase on my total salary, but rather 6.75% on 49% of it. Fifty-one percent of my salary is paid by the American Physiological Society, and my salary increase for 1998 had already been submitted and approved. However, Dr. Benos did not want me to receive that much of an increase and denied the 6.75% on my total salary. . . .[2]

---

[1] Doc. no. 23, Exh. 8.
[2] *Id.*

Dr. Benos testified that he could not approve an increase in that portion of plaintiff's salary paid by APS, "because it wasn't [his] money."[3] Plaintiff has not presented any evidence to prove that Dr. Benos could increase that portion of her salary that was funded by APS.

Following receipt of plaintiff's EEOC charge, defendant investigated her allegations and ultimately decided to increase plaintiff's *total* salary, not just the portion paid by UAB, as well as to pay plaintiff an amount approximating what she would have earned, had she been given higher increases on her total salary during years 1996 through 1998.[4] Plaintiff does not dispute that this amount was the correct amount of owed backpay, excluding interest.[5] After receipt of her notice of right to sue, plaintiff nevertheless filed this suit in a timely manner, alleging race discrimination and retaliation, in violation of Title VII and § 1981.

## II. DISCUSSION

A.   **Section 1981 Race Discrimination Claim**

Defendant contends that plaintiff's § 1981 claim is due to be dismissed because she did not invoke 42 U.S.C. § 1983 as the remedial vehicle for asserting such a claim against state actors.[6] In *Butts v. Volusia County*, 222 F.3d 891 (11th Cir. 2000), the Eleventh Circuit held that "§ 1983 contains the sole cause of action against state actors for violations of § 1981," and that a § 1981 claim against a state actor must be dismissed unless the plaintiff chooses to proceed under § 1983. *Id.* at 892-95. Plaintiff does not dispute defendant's contention. Instead, she argues that she should

---

[3]Doc. no. 13, Exh. B, at 118-19.
[4]Doc. no. 23, Exh. 2; Doc. no. 13, Exh. A, at 59-62.
[5]Doc. no. 13, Exh. A, at 62-65.
[6]Doc. no. 16, at 12-13.

be allowed to amend her complaint long after the pleadings have been closed,[7] to allege a cause of action based upon 42 U.S.C. § 1983.[8] This court, by separate order, denied plaintiff's motion to amend her complaint to allege such a cause of action.[9] Therefore, defendant's motion for summary judgment is due to be granted with respect to plaintiff's § 1981 claims.

**B.     Title VII Race Discrimination Claim**

Plaintiff alleges that defendant failed to award her "a pay raise in the same or similar amounts as her white counterparts."[10] Defendant contends that plaintiff cannot establish a prima facie case of discrimination with regard to her 1998 3.28% net salary increase, because "there is no right for any employee to receive pay raises every year, and certainly no right that the employee or even her supervisors have the final word in the amount of any pay raise."[11] This court construes defendant's argument as asserting that plaintiff did not suffer an adverse employment action and, as so construed, finds that it is without merit. Certainly, the size of a pay increase granted (or not granted) to a person directly affects that person's compensation, and such effect is sufficient to constitute an actionable employment action. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation . . . because of such individual's race. . . .").

Plaintiff's specific complaint, however, is that she was *told* she would receive a 6.75% raise, but only received a net 3.28% increase in total compensation. Even so, the evidence is undisputed

---

[7]Paragraph 1 of the scheduling order entered on June 26, 2000 (doc. no. 11) provided that "[n]o causes of action, defenses, or parties may be added after September 1, 2000."

[8]Doc. no. 22, at 3-5.

[9] Doc. no. 26.

[10]Doc. no. 22, at 5.

[11]Doc. no. 16, at 16.

that defendant in fact awarded plaintiff a 6.75% raise *on that portion of her salary paid by defendant*. The court cannot find that defendant's refusal to raise plaintiff's salary an additional amount — in effect pay for her raise on the APS portion of her salary — is an adverse employment action inflicted by defendant. Plaintiff has not directed the court to any evidence that defendant gave white employees a raise on their total salaries, including those portions paid by other sources.

Simply put, there is no evidence that defendant is responsible for raises with regard to the portion of the plaintiff's salary provided by APS, and plaintiff has not shown that defendant treated white employees differently, much less better, with regard to increases in those portions of their pay funded by other sources. Therefore, the court finds that defendant is entitled to a summary judgment on plaintiff's discriminatory pay-raise claim.

**C.    Retaliation**

As a preliminary matter, the court notes that plaintiff's EEOC charge did not contain a retaliation claim. Therefore, any claims of retaliation based on adverse actions allegedly precipitated by protected activity *before* the date on which plaintiff filed her EEOC charge are barred by the plaintiff's failure to exhaust administrative remedies. *See Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981) ("[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim *growing out of an earlier charge*.") (emphasis added); *see also McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (allegations of retaliatory conduct *occurring prior to the filing of the plaintiff's EEOC charge, but not included in the charge*, could not "serve as the basis of the retaliation claim alleged in her complaint"); *Williamson v. International Paper Co.*, 85 F. Supp. 2d 1184, 1196-98 (S.D. Ala. 1999) (refusing to consider incidents of harassment occurring prior to the filing of plaintiff's EEOC charge, and distinguishing

*Gupta* on the ground that it concerned retaliation occurring after the filing of an EEOC charge); *Hull v. Case Corp.*, No. 93-1209-CIV, 1993 WL 603554, at *5-*6 (S.D. Fla. Dec. 13, 1993) (dismissing retaliation claims based upon conduct occurring prior to the filing of plaintiff's EEOC charge, but not included in that charge).

To establish a prima facie case of retaliation, plaintiff must show "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Weeks v. Harden Manufacturing Corp.*, No. 01-16638, 2002 WL 1025965, at *2 (11th Cir. May 22, 2002) (citing *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir.1998)).

Unquestionably, plaintiff's EEOC charge constituted protected activity. In her brief in opposition to defendant's motion for summary judgment, however, plaintiff asserts that she "complained to her supervisors about her salary increases,"[12] and that these complaints also were protected activity. Yet, nothing in the record presented to this court indicates that plaintiff complained that her less-than-acceptable wage increases were based on her race. In order to prove "protected activity," the Eleventh Circuit has held that "a plaintiff must show that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks*, 2002 WL 1025965, at *2-*3 (quoting *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir.1997) (in turn citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989))). Plaintiff's generalized complaints are insufficient to constitute protected activity. *See*

---

[12]Doc. no. 22, at 20.

*Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1238 n.19 (M.D. Ala. 1999) (citing *Galdieri-Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Jurado v. Eleven-Fifty Corporation*, 813 F.2d 1406, 1411 (9th Cir. 1987); *Webb v. R & B Holding Company, Inc.*, 992 F. Supp. 1382 (S.D. Fla. 1998); *EEOC v. Shoney's, Inc.*, 536 F. Supp. 875, 877 (N.D. Ala. 1982)). Therefore, plaintiff's actionable retaliation claims are limited to those adverse actions she alleges were taken in retaliation for her act of filing an EEOC charge.

The only adverse action plaintiff asserts was taken after the filing of her EEOC charge is the assignment of additional job duties.[13] Assuming that the assignment of additional job duties was an adverse employment action, the court notes that plaintiff relies exclusively on the temporal proximity between her protected activity and the following adverse job action to raise an inference of a causal connection.[14] For the purposes of a prima facie case, close temporal proximity *may be* sufficient to show that protected activity and a subsequent adverse action are causally connected. *See, e.g., Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Plaintiff filed her EEOC charge on January 21, 1999. In her brief in opposition to defendant's motion for summary judgment, plaintiff alleges that she was assigned additional job duties some seven to eight months later, during September of 1999.[15] That temporal expanse is too great to allow a reasonable inference of a causal connection between the two events. *See, e.g., Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (three and a half months between protected activity and a subsequent adverse employment action, standing alone, is not sufficient to establish a causal connection) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390,

---

[13] Doc. no. 22, at 22-23.

[14] *Id.* at 23.

[15] *Id.* at 22.

1395 (10th Cir. 1997) (four months between protected activity and the following adverse employment action not sufficient to establish a causal connection); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three months between protected activity and an adverse employment action not sufficient to establish a causal connection)).

The court accordingly finds that plaintiff cannot establish a causal connection between her protected activity and the alleged adverse action. Therefore, defendant's motion for summary judgment is due to be granted.

### III. CONCLUSION

For the foregoing reasons, this court finds that there are no genuine issues of material fact, and concludes that defendants's motion for summary judgment is due to be granted as a matter of law. An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __25th__ day of June, 2002.

_____
United States District Judge